Good morning, Judge Jacobs, Judge Walker. Good morning. We will start with the first case on calendar, Dominick & Dickerman v. Deutscher Oil & Gas. Thank you. Good morning, Your Honors. William Fried and my colleague Heather Robinson from Herrick Feinstein for the appellant. I know you've got our briefs and you've probably read them, and I will try to keep this brief and hit the points that are important quickly. The decisions here, the two decisions we're appealing are not only wrong on the law, but they're inconsistent with each other, but the most disturbing part is that it's a fundamentally unfair decision because the case was not decided on the merits. And the first point I want to make is the district court relied on a New York court of appeals decision in Morpheus Capital, and there are three separate reasons why Morpheus does not apply to deny my client's claim. And the first one — The general rule, existing law at the time that we rule is the law that we go by. You would agree with that? I do, Your Honor, and Morpheus was decided a year after this contract. I'm not talking about the contract. I'm talking about when we decide the case. Yes, Your Honor. I do understand that, although I would say Morpheus was not — did not say that it was to be applied retroactively, nor am I aware of, and it may be, but I haven't seen a decision to apply to deny it. Well, every time a case comes down that a court of appeals that's part of the legal fabric at the time of the appeal, it is generally applied as, you know, in accordance with the — our normal jurisprudence, regardless of whether it reaches the conduct that existed before the case was decided. Well, Your Honor, that's — that part of it, and I understand that is only one of the three points I want to make. The most important point I would make is that even under a plain reading of this contract— What you're saying is that if your clients had known about Morpheus, they would have written a different contract. Well, that's — that's true, Your Honor. And the reason that that's important is that Morpheus was really following years of real estate determinations that had been made. The prior decisions in the financial services industry, which we cited in our briefs, the Chase Manhattan Bank case, all decided it the opposite way, which is why applying it retroactively — and I understand that's the way the law is — is kind of punitive to parties that were negotiating based on what was there. But even if you decide not to do that, there are other reasons why Morpheus doesn't change the claim here. And the first, most important, is this is different than Morpheus. Number one, there are — well, there are two — two clear things in our contract that don't exist in Morpheus that you have to consider. We have a tail period in our contract, and maybe even more importantly, we have a carve-out list. The carve-out list basically says these companies, if Deutsche Oil does an agreement with them, you still get paid. You don't get paid as much, but you still get paid. Why would you have a tail period and a carve-out list if it wasn't an exclusive right to sell as well as deal? Because in Morpheus, you didn't have any of those things. You just had a contract. So — SOTOMAYOR Because the list — because the list could contain the companies that the principal had already contacted, and that doesn't say too much about what the effect would be if the principal contacted other companies later directly. SOTOMAYOR I don't disagree, Your Honor. And that was part of it, although there is discovery in the case that indicated that at least Deutsche Oil, in their mind, they thought they were conveying an exclusive right to sell. What the district court did is they disregarded the testimony of their witnesses and just looked directly at the contract. And I think even under Morpheus, the Court said that you have to look at the intent of the parties as well. So either way — SOTOMAYOR No, I take your argument that Morpheus was not the law at the time and therefore can't be looked to to find out what the intent of the parties was. SOTOMAYOR Well, the third point I would make is, on top of the other two, is even if Morpheus does apply, let's assume it does apply, we still have a breach of contract claim here. And the reason is, if you look at Morpheus, I just want to read to the Court one line that the Court wrote in Morpheus. They said, and this is where Morpheus is deciding it's an exclusive right to deal, not to sell. And they say, An exclusive agency merely precludes the owner from retaining another broker in the making of the sale. Okay. Let's assume we disagree, but let's assume Morpheus applies. So they still breach the contract, because the evidence in the case — SOTOMAYOR Let me get over the procedural hurdle. SOTOMAYOR Correct, Your Honor. But the evidence in the case in Discovery demonstrates that they hired another broker. Now, they've given explanations to that, which I'll deal with in a second, but SOTOMAYOR It's way into your complaint. SOTOMAYOR Well, Judge, the answer to that is, okay, we didn't replete. Now, the argument that we should have gone back and amended is wrong. What were we going to amend? Our claims haven't changed. If the suggestion from the district court, and that's not what they said, was that we should have gone back and replete and added additional facts, fair enough, I'll get to that, but we weren't going to change our claims, Your Honor. The claims are the claims, and they weren't changing no matter what. It's a breach of contract regardless. So on that basis, there was nothing to amend. Kennedy The breach was the nonpayment that you were alleging was the nonpayment of the $2.9 million. SOTOMAYOR That's correct, but it didn't change our claim. So if we were going to amend, we weren't going to amend to change causes of action. Maybe I wasn't clear. I apologize. But as far as the — Sotomayor That's one of the reasons people plead, is to have causes of action that Sotomayor That's correct. But the typical reasons that a court, in this case a district court, would typically refuse to consider something like these types of facts don't exist here. The relation back to the original pleadings is not here. The no — the Respondent, I apologize, Deutsche Oil has not argued they were prejudiced in any way. Maybe most importantly, the parties litigated the issue of the broker in the case. They actually argued it — I apologize again. Deutsche Oil actually raised it in their motion for summary judgment. So when I said at the beginning that this wasn't decided on the merits, I understand the procedural hurdles. You don't have an opposing party saying this was not fair, this came up out of the blue. They litigated it with us and fully expected it to be part of the record. And you have a district court that said in its decision, you may have raised issues of fact, but we're not going to consider them because you didn't read plead. And while I understand the procedural hurdles, where my adversary doesn't claim prejudice, where my adversary litigated the issue, and where the strong presumption is to determine cases on the merits, on the — on the balancing of the equities, the district court should have considered these facts. Roberts. Mr. Freed, I have another question here. The fees are payable. I'm looking at 3B in the contract. Dominic should be entitled to receive, and DOGAG shall pay to Dominic a fee calculated as a percentage of each funding. Funding is capitalized, initial caps. And then when I go back to 2, to the first paragraph, rather, it says financial services. Dominic will use its commercially reasonable efforts to assist DOGAG to, colon, A, secure up to $325 million in primary debt, debt-based funding, small caps, and eventually equity-based funding upon terms acceptable to DOGAG. And then, parentheses, funding, small cap, S, in parentheses, close — end quote, and close parentheses. Why doesn't the term funding encompass within it, the term funding as used in B encompass with it the fact that Dominic is going to use its commercially reasonable efforts to assist? Your Honor, I would say that that's poor draftsmanship. I don't disagree that it's not well written. Well, I mean, not well written. It could be written quite easily if you understood that Dominic wasn't going to get anything unless they assisted. Again, Your Honor, I think that that was not what the parties understood. I understand what you're reading. Apart from what the parties understood, I mean, I don't see an ambiguity here. Maybe you can correct me if I'm wrong. Well, no, no. You're not going to look at what the parties decided, thought or intended, if the agreement is unambiguous. Well, I don't know that I agree that the agreement is unambiguous, Your Honor, but I do understand your point. What I'm saying is, well, first of all — You don't have to argue that it's unambiguous. I mean, that it's ambiguous, it seems to me, if we're going to look at anything else. Well, Your Honor, I think my point on this is that the parties have told everyone in discovery what they thought they were agreeing to. And I hear you on what is written here, but — Well, isn't there an integration clause in this contract? At the end. This agreement sets forth the entire understanding of the party, subject matter, and supersedes and cancels any prior communications, understandings and agreements between parties. Absolutely, Your Honor. Absolutely. It can't be modified or changed, except in written agreement by the parties. Absolutely, Your Honor. All I'm suggesting to you is that the parties have said what they understood this to mean. That — I don't disagree with the way you're reading it. What I'm suggesting is the parties don't read it the same way. And the district court — we're not here appealing a trial decision, Judge. We're here appealing a decision by a district court that didn't let us get to trial. And our point is that a jury should have decided this, not on a — certainly not on a motion for summary judgment where the district court refused to consider any of the things that we did. So, again, I'll leave you with this. It certainly — Or nobody raised it below. Is that — That's correct, Your Honor. That's correct. The last point I make, because I know my time is up, is I think the stronger — the stronger problem here, or the bigger problem, is the district court didn't disagree that we had raised some important issues, in fact, on the competing broker. Certainly those were the type of things that a jury should decide, but they chose not to consider them on a procedural issue, and all I'm suggesting is it would be a fair point if the typical things that the courts rely on to not consider things were existing here, prejudice, most importantly, and they have not suggested there was any prejudice. You've reserved three minutes for rebuttal. We'll hear you then, sir. Thank you, Your Honor. Good morning. Good morning. Brian Sutherland for Deutsch Oil. Thanks to the Court for accommodating our schedule and hearing us first. The Morpheus case is controlling here is decisional law that applies to this court's decision. Even if it were not retroactive, that would make no difference. There are nearly a century of precedents that have addressed the interpretational issue here from the appellate division. You're able to rely on cases in the financial sector because your adversary says at the time the contract was entered into, the dominant law and practice in the industry was one thing. Morpheus changes that, but that doesn't change the intention of the parties, which is always the touchstone of a contract case. New York law doesn't look to the subjective intent of the parties. It looks to the language of the contract, and that was true well before Morpheus. And I would direct the Court's attention to a case called Hammond Kennedy & Co., which does not arise in the real estate context. Also, Solid Waste Institute does not arise in the real estate context. Those cases preceded the contract here? Yes. Morpheus was quite clear on what it set out to do, and if you ask the New York Court of Appeals what was the law before Morpheus, it would say Morpheus was the law before Morpheus. It said in its decision they wasted their time. Well, they handed down a decision from the New York Court of Appeals, and it ratified nearly a century of precedent from the appellate division, which is the relevant precedent that should govern the decision that this Court must make under New York law. And under that law, the party looks to the language of the agreement. Counsel, which of these sophisticated parties drafted the contract? Dominick drafted the contract, Your Honor. This contract, I would add, contains what I would like to say is that Morpheus, the contract that the Court considered in that decision, contained a tail period, just like this contract does. And that didn't make any difference in Morpheus, and it shouldn't make any difference here. I can reference the language that the Court used in Morpheus. It said... Counsel also claims that the list of, the supplemental list of people that Deutsche could deal with makes it different than Morpheus. Can you speak to that? Well, the list to which it refers, that's Schedule I referenced in paragraph 3B1 of the agreement. As Judge Jacobs indicated earlier in his question, there's nothing about having different compensation for the broker, depending on whether it assisted in securing financing from a company on a list, or if it's assisted in securing financing from a company that's not on the list. In either case, it has to assist in securing the financing, as indicated by the definition of funding, capital F, which appears in paragraph 1. And I'm going to put a question on the other side of the equation. It could be read as ambiguous, because does the word funding encompass everything the entire preceding all the words of that sentence up to the word funding, or does it just refer to the $325 million funding, debt-based funding and equity funding as well, eventually? Or does it, I mean, in other words, the colon could break the continuity of the sentence. And then in that case, it's either funding either refers to just the amount and what it's getting, or it could be read, as I suggested to your adversary, that it includes the word assist. It's ambiguous. The best reading is that any principal in Deutsche Oil's position would want for its broker to assist in securing financing before it paid the broker a fee. A principal would not want to pay a fee to the broker if the broker provided no such assistance, and that's why New York law requires a clear and expressed  Sotomayor, it really depends upon what the parties contemplated, you know, and when they entered into the contract, if it's ambiguous. Well, I'll point out, Your Honor, the district court here did say that the contract was ambiguous on that point, but under controlling New York law, the ambiguity is what requires a decision in Deutsche Oil's favor. An exclusive brokerage, the more exclusive the brokerage, the more incentive the broker has, or the finder, to invest resources, advertising, phone calls, use of its connections in order to raise the funds. So at the outset, a decision has to be made between the parties as to under what circumstances they're going to be paid. It's not implausible that a company, at all implausible, that a company would agree to pay even if somebody had nothing to do with the procuring of the financing. Well, setting implausibility aside, Your Honor, I'll go straight back to Morpheus, which makes crystal clear that the court cannot consider parole evidence when making a determination about whether an exclusive right to sell exists as the district court held. So any ambiguity in this contract is what would require a decision for Deutsche Oil, not anything other than an affirmance in this case. Well, assuming the contract says exactly what it is you're saying, why wouldn't it be an abuse of discretion not to consider an allegation that, in fact, you used a competing broker? Well, a number of points there, Your Honor. First, they didn't seek leave to amend their complaint, and it was untimely. They sought to allege new claims in opposition to a motion for summary judgment. They said that themselves. They could have made a different claim. So it's a breach of contract. He just thought of another basis for it. It's the $2.5 million. But now, Discovery, it turns out that a sub hired a broker. So arguably, that's a violation of breach. And I don't know that he has to specify that at that point when the parties engage in it. They've engaged with the issue. It's an alternate theory of recovery, as they said in their opposition to our motion for summary judgment. And the district court was well within its rights to enforce the Rule 16 order. Now, the question Your Honor just asked goes to Rule 15. It's important to keep Rule 16 and Rule 15 separate. In its decision, the district court said these new claims are untimely. What Dominick has done is come back and said, what about Rule 15? It never raised that argument in the district court in any fashion, and the district court did not make a ruling under Rule 15b-2. My colleague will not be able to stand up on rebuttal and point to any place in this judge's decision where it made a ruling under Rule 15b-2. And Dominick has, therefore, forfeited that argument. There's nothing for this court to review under Rule 15b-2. There is no decision at all. And it's not in a position to make that decision on its own, because Rule 15b-2 is not akin to a jurisdictional question that the district court has an independent obligation to make or that this court can make in the absence of a ruling on that issue by the district court. And there is no such ruling here. It's forfeited as this Court ruled in Kroos v. Staley, in which the parties below didn't raise a Rule 15b-2 question. Even if the judge had ruled under Rule 15b-2, and he did not, there would be no abuse of discretion here, because Deutsch never consented to try the new claims. It very explicitly objected to the new claims by arguing, and this is in our motion for summary judgment, this is pages 1894 to 96. We said we want judgment under the law of the case. Our motion for summary judgment is about five pages long. We said we want judgment under the law of the case. And then when they raised, when Dominick raised new arguments in its opposition to summary judgment, we objected again. And this is on page 2665 of the record, which is our reply brief. And we said Dominick has ignored the court's directive. They have gone outside the law of the case. They've raised new claims. Sotomayor, I appreciate that you objected, but objecting does not amount to a statement of prejudice unless you come forward with some ground of prejudice. And the question then really is whether it's an abuse of discretion not to not to consider within the ambit of breach of contract the hiring of another or the retention of another competing broker when it seems to be common ground between you and your adversary that if you did, that would be a breach of contract. Well, yes, and we have our arguments with respect to why on these undisputed facts we're still entitled to judgment, and you've seen that part of our brief. And I'd be happy to address that part of our brief if the Court will give me that time. But I would say in response to Your Honor's question, consent is a fundamental requirement under Rule 15b-2, and there is no consent here. So the onus is not on Deutsch Oil to make a showing of prejudice. It's the plaintiff that has unpleaded new claims and has to find a way to get those claims before the Court, and it never did so, leaving this Court without a ruling to review in respect of Rule 15b-2. Is it a new claim, or is it — It certainly is a new claim. As they said, it's an alternate theory of recovery. Bring wine and new bottles. Their complaint says that Deutsch Oil was acting independently. They seem to believe that that would give them grounds for recovery. In their opposition, they said, what about this broker? They could have raised — sought leave to amend long before they raised those new claims in their opposition. Now, on the merits of those claims, if Your Honor would like to hear about them, Deutsch Oil didn't hire BGR. There's no record evidence to show that it did. Cornucopia hired BGR, which is the other broker to which they refer. And secondly — And Cornucopia is to Deutsch Oil subsidiary. Is a subsidiary of Deutsch Oil. That's right. But the Court shouldn't pierce the corporate veil in order to hold that Deutsch Oil hired BGR. It did not. The parties to the contract are only BGR. That raises a whole other set of questions. That veil piercing. I don't know whether we should or not. You don't — I mean, you say we shouldn't because you don't like the result. I don't like the result, and I wouldn't like the law that that type of decision would create if a court reached a piercing issue where the district court had not passed on it at all, and instead ruled that the claims were procedurally barred under Rule 16 without reaching Rule 15b-2. Thank you. Thank you, Your Honor. We'll hear rebuttal. I'll be brief. The Court below — the issues of Rule 15b and Rule 16 were not raised by either party below. The Court discussed it in its decision. So let's be clear on that. It wasn't raised by either party. I would say in response to counsel's argument, litigating on the merits is consent. They don't — the argument that they objected is really not true. They litigated this issue. They pointed out in their motion for summary judgment that we had raised the broker issue on our motion for summary judgment. They pointed it out. So even counsel today stood in front of you. They cannot say to you that they were prejudiced. One of the reasons they can't say they were prejudiced is that the reason we found out about this information so late in the game is because it was exclusively within their knowledge, not ours. Well, surely it's a part of a judge's consideration and exercising discretion to consider that the issue you're raising might entail the question of veil piercing, which is always a can of worms and involves discovery and new findings. And going back to square one. I'm sorry. I didn't mean to interrupt. No, go ahead. What I was going to say is, number one, the court below, the district court didn't say that in this case. They didn't say we're not going to consider that because it would involve veil piercing. And I would say this, Judge, there's actually discovery that was taken in the case that we wouldn't even have to go there because the discovery in this case in the record is that the same individual controls and owns all of the companies. This is so not going to be a difficult veil piercing argument. One individual controls and owns all of them. And by the way, they were using the same securitizing assets. I mean, if we got to that issue, which of course is what we want, I am certainly not concerned. I'll make my argument to a jury that we're dealing with the same assets, the same funding, really the same company, and the same one individual. We are not talking about what this court and most people would think of by a subsidiary company. They're all controlled by the same person. So it's not going to be your typical difficult veil piercing argument. I do want to say, though, is if the district court was going to take this tact on their motion for summary judgment, why didn't they do that on our motion for summary judgment? Because if you read the two decisions, they clearly went outside the record and considered additional facts on our motion, but chose not to do it on my adversary's motion. That's why I said at the very beginning, they're inconsistent, because the district court treated our motion almost as if it was a trial, and it's in our arguments that we were treated as we made the arguments we thought were succinct and going to result in summary judgment. We were wrong. But the court chose to treat it as if we were trying the case on our motion, and then applied a completely different standard on my adversary's motion. That's just fundamentally unfair, which is the point I made earlier, and I'll leave you with this one last point again. This was not decided on the merits. They can't stand here and make an argument that they should get summary judgment on the merits on the issue of the broker. They may have arguments of why they should win, but they would certainly never have gotten summary judgment.